940 F.2d 654
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Sondra WARD, Plaintiff-Appellant,
v.
UNIVERSITY OF SOUTH CAROLINA, Defendant-Appellee.
 No. 90-1550.
 United States Court of Appeals, Fourth Circuit.
 Argued May 8, 1991.
Decided Aug. 5, 1991.
 
 Appeal from the United States District Court for the District of South Carolina, at Florence. C. Weston Houck, District Judge. (CA-86-1359-15B)
 Winston Dowd McIver, Sr., McIver & Graham, Conway, S.C., for appellant.
 Henry S. Knight, Jr., Nelson, Mullins, Riley & Scarborough, Columbia, S.C. (Argued), for appellee; Laura E. Zoole, Nelson, Mullins, Riley & Scarborough, Gwendolyn Howell Hensel, Associate Legal Counsel, System Legal Department, University of South Carolina, Columbia, S.C., on brief.
 D.S.C.
 AFFIRMED.
 Before SPROUSE and NIEMEYER, Circuit Judges, and HERBERT F. MURRAY, Senior United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Sondra Ward appeals from the summary judgment granted to the University of South Carolina in her action alleging discriminatory and retaliatory discharge from her position in the university bookstore, in violation of Title VII, 42 U.S.C. Sec. 2000e, et seq., and 42 U.S.C. Secs. 1981 and 1983. We affirm.
 
 
 2
 Ms. Ward, a black female, was employed by the university bookstore in January 1982. Jimmy Soles, a white male, was the bookstore director and Ward's supervisor. At the time of Ward's employment, another white male, James Pack, was employed at the bookstore as a part-time work-study student. Pack was about fifty years of age and had retired from the military before attending the University of South Carolina. The evidence reflects that Soles, prior to Ward's employment, had promised Pack that if Soles were ever promoted, Pack would become director of the bookstore.
 
 
 3
 Ward and Pack did not work well together. Although she was unable to point to any specifics, she believed he was prejudiced against blacks. She perceived an "air" about Pack which, in her opinion, was evidence of any underlying racial bias. The problem was exacerbated when Soles promoted Pack to acting director of the bookstore during a time when Soles was required to be absent. After Pack became the acting director, with responsibility for its daily operation, Ward frequently expressed her displeasure about Pack's assignment and her subordinate position. Despite Sole's repeated instructions to Ward that she must cooperate with Pack, she declined to follow Pack's instructions, and for this received a written reprimand. She was advised that such repeated incidents would lead to further disciplinary action up to and including dismissal. In August 1984, she reviewed these matters in detail with Soles and, in mid-October, met with both Soles and Pack in an attempt to resolve their differences. At the end of October, when matters had not improved, Soles terminated Ward's employment, advising her of her right to contest her termination through the university employee grievance procedure.
 
 
 4
 Ward exhausted the university grievance procedures and finally appealed the continued negative decisions to the State Employee Grievance Committee. That appeal was rejected as untimely, and she was advised that she could appeal to a South Carolina state court within thirty days of her receipt of the rejection. Since Ward declined to appeal the findings of the review board to the state courts, the findings affirming her discharge became final.
 
 
 5
 In this, the federal action, the district court adopted the findings of a magistrate judge that Ward, in response to the University's motion for summary judgment, had made no showing that her discharge was racially motivated. Consequently, he granted summary judgment to the University on her Title VII claims. The district court also granted summary judgment on her Secs. 1981 and 1983 claims on the grounds that her failure to appeal the administrative decisions precluded her from pursuing the claims under Secs. 1981 and 1983.
 
 
 6
 We agree with the district court that Ward made no showing of racial motivation in her discharge, nor did she successfully contest the University's showing that there was a legitimate business reason for it. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804-806 (1973); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981). There being no genuine issue of material fact as to the discrimination issue, summary judgment was proper. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Likewise, the district court was correct in concluding that the finality of the administrative decisions on Ward's claims of racial discrimination constituted res judicata, barring her pursuit of those claims under the aegis of Secs. 1981 and 1983. University of Tennessee v. Elliott, 478 U.S. 788, 799 (1986).
 
 
 7
 In view of the above, the judgment of the district court is affirmed.
 
 
 8
 AFFIRMED.